UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DANIEL RILEY, JASON GERHARD and CIRINO GONZALEZ,<br><br>Defendants | Criminal No. 07-189-GZS |

**ORDER DENYING DEFENDANT RILEY'S MOTION TO SUPPRESS**

Daniel Riley has moved to suppress the statements he made to government agents during proffer sessions and exclude all evidence gathered as a result of the derivative use of those statements because they were not voluntarily made. Specifically, Riley asserts that his former court appointed attorney, Mark Howard Esq., mislead him into believing he "would be released if he cooperated with the Marshals." Motion to Suppress (Docket # 102) ¶ 2. Defendant Riley also states that Assistant United States Attorney Arnold Huftalen told him "that [the] judge releases no one without my permission." Motion to Suppress ¶ 5(a). The Government denies that Riley's statements were coerced or involuntarily made. In addition, the Government asserts that it does not intend to offer statements made by Riley in its case in chief; however, pursuant to the terms of the proffer agreement it has with Mr. Riley, the Government has reserved the derivative use of the information provided by Riley for use at trial.

**I. FACTS**

The Court held a suppression hearing in this matter on February 4, 2008. Based on the testimony presented and exhibits admitted in evidence at the suppression hearing, the Court finds

the following. After Daniel Riley was arrested in September 2007, Mr. Howard was appointed by the Court to be, and did thereafter become, the attorney for Mr. Riley. Mr. Riley indicated to Mr. Howard that he was eager to obtain pretrial release.[1] Mr. Howard talked to Assistant United States Attorney Robert Kinsella about the potential for Mr. Riley to be released. Mr. Kinsella told Mr. Howard that he believed that Mr. Riley was a dangerous individual who needed to be detained, but that there was a possibility of pretrial release if Mr. Riley cooperated and impressed the Government with the type of information he provided. Mr. Howard conveyed the potential for release to Mr. Riley and Mr. Riley agreed to cooperate.

On September 19, 2008, Mr. Howard had in his possession a copy of the proffer letter agreement drafted by the Government, which he presented to Mr. Riley. See Government Exhibit # 1. The proffer agreement provides, in pertinent part:

> (1) Except as provided in this letter, no statement made by Mr. Riley during the proffer session will be used by the government in any direct case against him in any trial or other proceeding unless such statement is false, misleading or made with intent to obstruct justice, in which case the statement may be used directly against Mr. Riley in any proceeding for any purpose;
>
> (2) If Mr. Riley testifies contrary to anything he says in the proffer in any trial or other proceeding, the government may use any statement made by Mr. Riley during the proffer or information obtained directly or indirectly from the proffer for the purpose of impeachment, cross-examination or rebuttal.
>
> (3) The government may make derivative use of and may pursue investigative leads suggested by any statements made by Mr. Riley or other information provided by him, for any purpose. This provision eliminates the necessity for a Kastigar hearing at which the government would otherwise be required to prove that the evidence it would introduce in any trial or other proceeding is not tainted by any statements made by or other information provided by Mr. Riley during any proffer.

---

[1] Riley asserts in his Motion that Mr. Howard told him that if he cooperated he would be released and it would put him "in the best position for a reduced sentence." Motion to Suppress ¶¶ 5(a), 6. From this statement it is clear that Mr. Riley understood that any type of release he would be eligible to obtain would be pretrial and not that he understood that he may be released and ultimately not charged.

>   (4) Pursuant to U.S.S.G. §IB1.8, the government agrees that any self-incriminating information provided by Mr. Riley during the examination will not be used in determining his applicable sentencing guideline range.

Government Ex. 1, at 1-2.

In private, Mr. Howard discussed each and every operative provision of the proffer letter including the Government's reservation of the use of derivative evidence. Mr. Riley indicated to Mr. Howard that he understood the letter, including the derivative use provision and signed the proffer letter signifying his agreement to its terms. Id. at 2. Prior to Mr. Riley providing any information to the Government, Mr. Kinsella also explained each of the paragraphs including the derivative evidence paragraph. Thereafter, Mr. Riley provided information to the Government. At the end of that first proffer session, the Deputy United States Marshal in attendance at the proffer session told Mr. Riley that he had probably "saved lives" with the information he provided.

During a second proffer session, on September 20, 2008, a deputy United States Marshal stated that Mr. Riley would not be released. That statement caused some alarm to Mr. Riley as well as to Mr. Howard. Immediately following the comment, the participants of the proffer session took a break. In the hallway outside the conference room where the proffer session was being conducted, Mr. Huftalen told Mr. Howard that he was surprised by the deputy's comment, pointed out that the deputy does not speak for the prosecution, and emphasized that the potential for Mr. Riley's pretrial release remained on the table. In spite of that statement being made, Mr. Riley continued to provide information to the Government at that proffer session and at another proffer session on September 24, 2008. Mr. Riley was never released on bail.

## II. DISCUSSION

The critical "voluntariness" issue is whether the conduct of "law enforcement officials was such as to overcome the will to resist and bring about a confession not freely self-determined." Arizona v. Fulminante, 499 U.S. 279, 288 (1991). The statement of a criminal defendant that was obtained as a product of police coercion is deemed to be involuntarily given and is subject to suppression. Id. at 287-90. In other words, governmental coercion is a necessary predicate to finding a confession involuntary. Colorado v. Connelly, 479 U.S. 157, 167 (1986). In addition, there must be some causal connection between the police conduct and the confession. Id. at 164, n.1.

Based on the evidence presented at the hearing, the Court finds that Mr. Riley was not subject to any type of coercion by the Government to cooperate or make any statements. The statements made by Mr. Riley in the proffer sessions were freely and voluntarily given after a full explanation of each of the specific provisions set forth in the proffer letter. Mr. Riley was not mislead by anything said to him by Mr. Howard or Mr. Kinsella. Specifically, Mr. Riley was not told that if he cooperated, he would be released. At all times, Mr. Riley had a full understanding of the situation; that is, because of his cooperation there was a possibility that he could be released on bail. There is absolutely no credible evidence to support the claim that attorney Howard lied to Mr. Riley about the terms or meaning of the proffer agreement or about the likelihood of being released on bail.

On this record, the Court finds that the provisions of the proffer letter are fully operative. Specifically, subject to the Rules of Evidence and other provisions of the law, the Government may offer at trial evidence resulting from the derivative use, as set forth in the proffer letter, of the information provided by Mr. Riley.

Accordingly, the Court **ORDERS** that Defendant Riley's Motion to Suppress be, and it is hereby, **DENIED**.

>	/s/ George Z. Singal_____
>	Chief United States District Judge

Dated this 8th day of February, 2008.