**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Cr. No.: 07-cr-189-01-GZS** |
| | ) | |
| **DANIEL RILEY** | ) | |

## MOTION TO DISMISS OR FOR NEW TRIAL

Now comes the defendant, Daniel Riley, by and through counsel, and, pursuant to his rights to due process, fair trial, and confrontation, as well as Federal Rule of Criminal Procedure 33, and Federal Rule of Evidence 615, moves this Honorable Court to vacate his conviction and dismiss the charges based on newly discovered evidence which shows, *inter alia*, that: 1) a witness called by the Government testified inaccurately and incompletely due to fear and intimidation resulting from actions of federal agents and/or other law enforcement authorities; 2) that physical evidence introduced by the Government was admitted improperly and without a true and complete foundation; and that potentially exculpatory or impeaching evidence was not produced by the Government to the accused for use in confronting this witness and others called by the Government; 3) potentially exculpatory and/or impeaching evidence relating to the witness and the agents was not disclosed to the defendant; and, 4) witnesses violated sequestration.

In support of this motion, the following is stated :

1. Mr. Riley was convicted after a jury trial and subsequently sentenced to 36 years in prison (the sentence has subsequently been reduced to 388 months). The guilty verdicts were

1

returned on April 9, 2008.

2.   Recently, a witness called by the Government at trial has come forward, of his own volition, and provided an affidavit asserting, among other things, that his involvement in the trial was the result of threats and intimidation by government agents and employees and that his testimony was incomplete and incorrect.  See Affidavit of Joel Edgington, submitted as an exhibit to this motion.

3.   Mr. Edgington was called, by the Government, as a witness in the trial of this case in New Hampshire in 2008.  Mr. Edgington relates that an ATF agent and a member of the local Sheriff's office came to serve him with a subpoena two days before the date on which he testified.   He indicated that he would not testify and asked the exact nature of the case and what the government wanted him to testify about, but they refused to enlighten him.  Affidavit at page 1.

4.   In response to his refusal to cooperate, they told him that he would be facing contempt charges in this Court, as well as charges in his own state, since this, according to them, would be a violation of an outstanding restraining order.  They threatened him with incarceration.  Id. These facts were not revealed to Mr. Riley or his attorney by the Government prior to Edgington's testimony at trial (or at any time since).

5.   This witness was understandably scared after these threats, since the ATF agent

who served the subpoena was the same agent who was involved in a case months

earlier that Edgington believed destroyed his life (including causing him to lose his job in the

local sheriff's department) . The ATF agent was accompanied by an officer from that same

sheriff's department .

6.   When Edgington arrived in New Hampshire, another agent met him and told him that

he was in protective custody.   This agent likewise refused to tell him why he was being forced to

testify, or tell him the subject matter of his expected testimony.  Edgington felt intimidated and

anxious all through this process, because of the lack of information and because of the earlier

threats to prosecute and jail him.  Id.

7.   Mr. Edgington indicates that he was brought to the courthouse and up to an office

where he met with an attorney from the U.S. Attorney's office.  The attorney showed him pictures

on a laptop computer.  As part of this interview, the attorney showed him a picture of an

envelope with items apparently removed from the envelope and asked if it look like something he

had shipped.  He said yes.  Affidavit at page 2.

8.   Edgington further relates that when he was called to the stand at trial, the actual

physical envelope that he was shown was not the same envelope as he had been shown on the

computer earlier.  Id.  He became very scared and he was already intimidated by the actions of

the government agents, but now he was really concerned that something was being done that

should not be done and that he was in the middle of it.   He was terrified at that point and just

wanted to get out of there as fast as he could.  He did not speak out about this at that time,

because he was scared of the Government.   Id.

9.   When Edgington met with the attorney who showed him the computer photos in the

U.S. Attorney's office prior to his testimony, he again asked what this was all about, but did not

get a full answer.  The attorney then asked him what he was worried about.  He then told the

attorney that the ATF had "screwed" him over and that he was worried that they were doing it

again for some reason.  He told the attorney that those problems involved a stalking order and

that he had threatened to sue the government after what he believed were illegal tactics and

violations of his rights.  Id. at page 3.   Then the attorney seemed reluctant to put him on the

stand.  Id.

10.  Edgington wanted to say something on the stand about his prior treatment by the

ATF and his situation, but he did not, because he feared retaliation.  Id.

11.   While Edgington was waiting to testify, there were other disturbing occurrences.

Government agents told him that he was testifying against a militia group that was planning an

attack against the United States.  Edgington also heard other witnesses in a conference room

outside the courtroom talking about the subject matter of their testimony and the ATF agent who

met him at the airport when he arrived in New Hampshire was present during some of those

4

conversations.  Id.  These appear to be further violations of due process, as well as violations of the sequestration order.

12.  The Supreme Court held in Brady v. Maryland, 373 US 83 (1963), that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Id. at 87.   As is clear from the record of this case, Mr. Riley made repeated requests for discovery and production of exculpatory or impeaching evidence.

13.  Certainly, the threats to prosecute and the other negative and positive pressures exerted by the government agents on this witness were violations of due process, and the failure to advise the defense of all of this potentially impeaching and/or exculpatory evidence futher deprived Mr. Riley of due process, as well as his rights to fair trial by an impartial jury, confrontation, and cross-examination.  Moreover, the inaccurate and misleading testimony by this terrified witness thoroughly polluted the trial process, especially when considered in light of the improper introduction of physical evidence (the fast-burning magnesium tape), without foundation, to bolster the Government's allegations about explosive devices.

14.  As the Supreme Court summed things up in Giglio v. United States, 405 US 150 (1972), "For these reasons, the due process requirements enunciated in Napue and the other cases cited earlier require a new trial, . . . ."  Id. at 154, citing Napue v. Illinois, 360 US 264 (1959);

Mooney v. Holohan, 294 U. S. 103, 112 (1935); Pyle v. Kansas, 317 U. S. 213 (1942); Brady v. Maryland, 373 U. S. 83, 87 (1963).  In light of the multiple violations exposed by this new evidence, and the egregious nature of the government agents' actions, Mr. Riley submits that the proper relief is dismissal of the charges.

WHEREFORE, the Defendant asks this Court to grant his motion, to vacate his convictions, and to dismiss the charges.  In the alternative, he asks that the convictions be vacated and that a new trial be granted.

                                        Respectfully submitted,
                                        Daniel Riley,
                                        By his attorney,

Date: April 8, 2011

                                        By:/s/ Sven D. Wiberg
                                        Sven D. Wiberg
                                        Wiberg Law Office, PLLC
                                        Bar No. 8238
                                        2456 Lafayette Road, Suite 7
                                        Portsmouth, NH 03801
                                        (603) 686-5454


                        Statement Pursuant to Local Rule 7.1

        No assent has been sought due to the nature of this motion.  No memorandum of law is presented herewith, since applicable rules and law are cited herein.


                                        /s/ Sven D. Wiberg

<u>Certificate of Service</u>

      The Government is a participant in the electronic filing system, and, consequently, the Government and Assistant United States Attorney Arnold H. Huftalen, Esquire, will receive a copy of this pleading through ECF on this date.

                        <u>/s/ Sven D. Wiberg</u>