AFFIDAVIT OF JOEL EDGINGTON

I, Joel Edgington, hereby depose and say:

I was a witness in the trial of Daniel Riley in federal court in New Hampshire in 2008. Law enforcement (including a local ATF agent and member of the local Sheriff's office) came to get me two days before the date on which I testified. They just showed up at my house around 10:30 in the morning, telling me that I had to be on a flight early the next morning (within 24 hours). The trial was the day after I landed in New Hampshire. I was not anxious to testify and I was not told the exact nature of what the government wanted me to testify about prior to being forced to travel to New Hampshire.

I received a phone call on the day they came to get me from a special agent from the ATF who told me that he needed to speak with me. When they came to get me at my home, they presented me with what they said was a subpoena to appear in court in federal court in New Hampshire. I told them that I did not want to go with them. In response, they told me that I if I did not, that not only would I be facing contempt charges for refusing to go, but then I would also face jail time on an additional charge in the state court as a violation of a restraining order from completely unrelated case. I was told that if I did not go with them, then it would be used to prosecute me for violation of the court's order in my restraining order case.

I was upset and nervous because the ATF agent was the same agent involved in a case months earlier that destroyed my life eight months or so prior. He came to my house with a major from the Sheriff's Department (an agency where I had previously worked, and which had been involved in the earlier matter). Before that day I had no indication whatsoever of the possibility that I would be required to testify in any federal case.

I asked them what this was all about and they said that it didn't concern me. I asked them as to why, if it didn't concern me, I would have to appear in New Hampshire. I did not get an answer from them on that question.

The ATF agent drove me to the airport and put me on the plane. Another officer or agent met me in New Hampshire and told me that I was in protective custody. He would not tell me why I was in custody or explain exactly what was going on. I was taken to a hotel not far from the federal courthouse in Concord New Hampshire.

I was not told what they expected me to say at the trial, or given any other information about my involvement in the trial, until later that day. I felt intimidated and anxious all through this process, because of the lack of information and because of the earlier threats to prosecute me. As I said, earlier when they first came to get me in at my house, I had initially told them, in rude terms, to go away, because I did not want to help them, especially after what they had done to me eight months earlier. Their response had been that I had two choices:1)  to go with them and testify, or, 2) to be found in contempt, which would also be a violation of the outstanding stalking order in my state. They told me that failure to cooperate would result in jail time.

EDGINGTON AFFIDAVIT
Page 2.

The next morning I was picked up at the hotel by three agents, one from the ATF, and two from the Marshal's service. They brought me to the courthouse and up to an office where I met with an attorney from the U.S. Attorney's office. The attorney showed me pictures on a laptop computer and asked me questions about the pictures. He showed me a picture of an envelope and asked me if it look like something I had shipped. I said yes. The picture on the laptop, showed an item that was clearly open. The envelope was ripped open and the contents were out of it. When I testified in court, the envelope that I was shown on the stand was not the same envelope. The envelope presented in court was not the same envelope because it was all taped up, looked like it had not been opened, and was otherwise different. The item in court looked like it might have been something from me, since the handwriting appeared to be mine, but it was not the same item I was shown on the laptop.

At this point in my testimony, which was the direct examination by the government's attorney, I became very scared and my heart began to pound. I was already intimidated by the actions of the government agents I had dealt with since they came to get me, but now I was really concerned that something was being done that shouldn't be done and that I was in the middle of it.

When the envelope was opened in court during my testimony, I knew for certain that there was no way that this was the same item that I had shipped. This was really not what I had sent. I was terrified at this point.

At the time of trial I did not even recall the specific customer to whom I had sent the item that was shown to me in the picture pictures on the laptop. It had been quite some time since that item was shipped. When I realized at the trial that this was not the same item, I was terrified. I was scared to death at that time, because I had no idea what I was involved in. I had gone through horrible dealings previously with the ATF in the state case, the on that they were saying would cause me to be jailed if I did not cooperate with them in this case. At that point in my testimony, I just wanted to get out of there as fast as I could.

The item that they showed me in the courtroom was not shown to me prior to my testimony. I only saw and got to handle the physical item for the first time when I was being asked questions on direct examination by the Government. I did not speak out about this at the time, because I was scared of the Government.

When I met with the attorney who showed me the laptop photos in the U.S. Attorney's office, I asked him what this was all about and he did not give me a full answer. He told me that I was going to be testifying about an eBay transaction that I had done, but he did not give me anywhere near full details about the case in which I would have to testify. Since I kept on asking him what this was all about, he asked me what I was worried about. I told him I told that the ATF had screwed me over and that I was worried that they were doing it again for some reason.

EDGINGTON AFFIDAVIT
Page 3.

After a told the attorney about my concerns, it seemed to me that he was reluctant to put me on the stand. I could understand why, since I was thinking about volunteering that I did not trust me ATF. I wanted to say something during my testimony about my contact with the ATF and my situation, but I did not, because I was afraid of retaliation.

When I first told the Government's attorney about my problems with the ATF, I told him that it involved a stalking order and that I had threatened to sue the government. The protection order case involved what I believe to be illegal tactics, searches, and other violations of my rights by the ATF and other parts of the government. I explained this to the attorney after he asked what I was worried about.

The Major from the Sheriff's Department who came to my house was Rusty Garmin. He and the ATF agent came to my house in Springfield Ohio to serve the subpoena. I used to work at the same Sheriff's Department with Garmin.

The ATF agent who came with Garmin to my house was one of the ATF agents involved in causing me so much trouble previously. He was special agent John Tilton. After I told them that I did not want to go to New Hampshire, they told me to think about it, because it was going to be contempt of court and it would also be a violation of the stalking order.

While I was waiting to testify at the courthouse, agents involved in the case told me that I was testifying against a militia group that was planning an attack on the United States.

Also, while waiting in a conference room outside the courtroom prior to my testimony, I heard other witnesses in the room talking about what they were going to testify about. The ATF agent who met me when I arrived in New Hampshire was in that room at the time of some of this conversation.

Dated: 04-08-2011                                    _____
                                                     Joel Edgington

STATE OF OHIO
COUNTY OF ____CLARK_____

Sworn to and subscribed before me on this __8th__ day of April, 2011, by Joel Edgington that the foregoing is true and correct to the best of his knowledge and belief.

                                   Before me: _____ Amy Aiken
                                   Notary Public/Justice of the Peace
                                   My Commission Expires: Nov 19, 2014