**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) Docket no. 07-cr-189-GZS |
| DANIEL RILEY, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |
| | ) |

**ORDER ON PENDING POST-TRIAL MOTIONS**

Before the Court are two motions: (1) the Motion to Dismiss or For New Trial by Defendant Daniel Riley (Docket # 673) and (2) the Motion for Joinder in Motion for New Trial by Defendant Jason Gerhard (Docket # 674).  For the reasons explained herein, the Court DENIES both motions.

## I.    LEGAL STANDARD

Federal Rule of Criminal Procedure 33 allows a defendant to file a motion for a new trial based on newly discovered evidence within three years of the verdict.  "[I]f the interest of justice so requires," the court may vacate the judgment of conviction and allow a new trial.  Fed. R. Crim. 33(a).  Under the First Circuit standard, a defendant requesting a new trial based upon newly discovered evidence must establish that:  "(i) the evidence in question was unknown or unavailable to him at the time of trial; (ii) his failure to learn of it did not result from a lack of due diligence on his part; (iii) the evidence is material; and (iv) the evidence, if available upon retrial, would likely bring about an acquittal."  United States v. Mathur, 624 F.3d 498, 503 (1st

Cir. 2010) (citing <u>United States v. Huddleston</u>, 194 F.3d 214, 218 (1st Cir.1999); <u>United States v. Wright</u>, 625 F.2d 1017, 1019 (1st Cir.1980)).

Defendant may also seek a new trial based on the Government's failure to disclose evidence favorable to the defense. Withholding of such evidence is generally considered a violation of due process under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and <u>Giglio v. United States</u>, 405 U.S. 150 (1972). If a defendant shows that evidence favorable to the accused (either exculpatory or impeaching) was suppressed by the prosecution (either willfully or inadvertently), he need only then show a "reasonable probability" that the undisclosed evidence would have produced a different result at trial. <u>Mathur</u>, 624 F.3d at 504; <u>see also</u> <u>United States v. Casas</u>, 356 F.3d 104, 114 (1st Cir. 2004) (explaining that a <u>Brady</u> violation produces prejudice when "there is a reasonable probability that the favorable evidence would put the whole case in such a different light as to undermine confidence in the verdict"). The First Circuit has described this standard for a new trial based on <u>Brady</u> violations as "more defendant-friendly" and "less formidable" <u>Mathur</u>, 624 F.3d at 503. In a similar vein, the First Circuit has noted that undisclosed impeachment evidence, in particular, may warrant a new trial if it "undermine[s] confidence in the outcome of the trial." <u>Mathur</u>, 624 F.3d at 504 (internal quotations omitted).

## II.     PROCEDURAL HISTORY AND FACTUAL BACKGROUND

The backdrop for the present motion is summarized in the First Circuit's opinion on the direct appeal of this case: <u>United States v. Gerhard</u>, 615 F.3d 7, 12-17 (1st Cir. 2010). On April 9, 2008, Defendant Daniel Riley was found guilty of one count of conspiracy to prevent officers of the United States from discharging their duties (Count I), one count of conspiracy to commit offenses against the United States (Count II), one count of accessory after the fact (Count III)

and one count of possession and use of a destructive device in connection with a crime of violence (Count VI).  Riley was subsequently sentenced to a term of 388 months.  Likewise, on April 9, 2008, Co-Defendant Jason Gerhard was found guilty of one count of conspiracy to prevent officers of the United States from discharging their duties (Count I), one count of conspiracy to commit offenses against the United States (Count II), one count of accessory after the fact (Count III) and one count of possession and use of a firearm in connection with a crime of violence (Count IV).  At trial, Gerhard was found not guilty of a portion of Count IV that carried higher penalties for possession or use of a destructive device in connection with a crime of violence.  Gerhard subsequently received a 240-month sentence.

The extensive evidence supporting the convictions of Riley and Gerhard was presented during a 12-day jury trial.  The Government presented numerous witnesses among them Joel Edgington, who was disclosed as a potential Government witness prior to trial.  Edgington testified on March 27, 2008.  On the witness stand, Edgington was shown a single exhibit, Government Exhibit 11f, consisting of a large envelope and the contents of the envelope.  At trial, the parties stipulated that Government Exhibit 11f was found at the Brown residence. Edgington testified that he recognized the envelope and the handwriting on the envelope, that the return address listed on the envelope was his address and further acknowledged that the envelope was addressed to:  "Jason Gerhard, 2541 Montauk Highway, Brookhaven, New York 11719." Edgington also identified the contents as five rolls of magnesium ribbon.  He indicated that around June and July of 2007 he was selling magnesium ribbon on eBay and acknowledged that his eBay listing for the ribbon explained it could be used to ignite thermite.  Following Edgington's direct testimony, the Government moved to admit Government Exhibit 11f and the exhibit was admitted over objection.

In connection with the pending motions, Joel Edgington has provided an affidavit, dated April 8, 2011 ("Edgington Affidavit") (Docket # 673-1), which describes the circumstances by which he came to travel from his home in Springfield, Ohio to Concord, New Hampshire for the trial.  Edgington now claims that he was presented with a subpoena by Special Agent John Tilton of the ATF and Major Rusty Garmin of the local Sheriff's Department (where Edgington previously worked).  Edgington claims that these law enforcement officers told him that he would face contempt charges if he did not appear.  He also claims the officers threatened him with additional charges for violating an unrelated restraining order if he did not testify pursuant to the subpoena.  Edgington further indicates that he had previous interactions with both of these officers and that one of them was involved in a case that "destroyed [his] life" in 2007.  Edgington indicates now that he was "afraid of retaliation" when he testified and that, as a result, his testimony may not have been entirely truthful.  He specifically seeks to recant his testimony identifying the contents of the envelope as the same item he had shipped.

Edgington's Affidavit also describes the meeting he had with a representative of the United States Attorney's Office prior to testifying.  In his affidavit, Edgington claims there were significant differences between the pictures he was shown during that meeting and the actual exhibit he was shown while on the stand.  He also claims that he told this representative of the United States Attorney's Office about his distrust of the ATF based on his prior dealings with the agency, which "involved a stalking order" that involved what Edington felt were "illegal tactics, searches, and other violations of [his] rights."  (Edgington Aff. at 3.)

Finally, Edgington's Affidavit indicates that while he was waiting to testify in a courthouse conference room he "heard other witnesses in the room talking about what they were going to testify about."  (Edgington Aff. at 3.)

III.   **DISCUSSION**

A.  **Defendant Riley's Motion to Dismiss or for New Trial (Docket # 673)**

The Court notes that no one involved in the present motions has requested the Court hold a hearing, evidentiary or otherwise, regarding the allegations raised by Edgington's Affidavit.  In the Court's view, no hearing is necessary.  See, e.g., Wright & Miller, Federal Practice & Procedure § 583 (4th ed. 2011).  Rather, the Court assumes for the purposes of its analysis that Edgington's affidavit is entirely true and that if a hearing were held he would credibly testify to the assertions contained in his April 8, 2011 affidavit.[1]  Even with these assumptions, the Court concludes that Riley cannot meet the standard for obtaining the relief he requests.

Quite simply, Edgington's testimony was immaterial to Riley's convictions and the Court, thus, fails to see how Edgington's revised testimony would bring about an acquittal of Riley on any of the charges upon which he was convicted.[2]  It is true that Riley was convicted for his involvement in the creation and possession of destructive devices, also commonly referred to as "bombs."  However, there was no evidence suggesting that Riley's bomb making was tied to Government Exhibit 11f.  Assuming for the sake of argument that Riley could prove at retrial that Edgington had sent Gerhard baseball cards in the envelope marked as part of Government Exhibit 11f, the outcome would be the same.[3]

---

[1] Nonetheless, the Court notes that the Government has endeavored in its response to explain any difference between the photographs shown to Edgington during his prep session and the actual exhibits he handled at trial.  (See Gov't Response (Docket # 677) at 5-6 & Exs. 3-5.)  If an evidentiary hearing were held, the Court would consider this evidence in determining whether Edgington's new testimony is material and/or would have been available to Defendants at the time of trial upon an exercise of due diligence.

[2] As the Government points out in its response, it is telling that Riley's counsel chose to forego any cross examination of Edgington at trial.  (See Tr. Transcript (Docket # 577) at 79 & 83.)

[3] The Court does not read Edgington's affidavit as disclaiming any ties to the envelope portion of Government Exhibit 11f.  Likewise, Edgington does not appear to disclaim the fact that he did sell magnesium tape and ship it via

To the extent that Riley argues that the Government wrongly withheld <u>Brady</u>/<u>Giglio</u> material related to Edgington's prior interactions with the law enforcement officers who served his subpoena, the Court has also considered Riley's Motion under the "more defendant-friendly" "reasonable probability" standard.   <u>Mathur</u>, 624 F.3d at 503.   In the Court's view, any impeachment of Edgington would have been rather minimal and the impact would have been modest, at best.   <u>See</u> <u>id.</u> at 505 (noting that the impact of withholding impeachment evidence is high if the testimony is "essential").   While Edgington's Affidavit suggests he might have had a lot to say regarding his personal history with the ATF and the officers who served his subpoena, much of this history would not have been admissible.   <u>See, e.g.</u>, <u>United States v. Wilson</u>, 605 F.3d 985, 1005 (D.C. Cir. 2010) (noting that information must be admissible to be material under <u>Brady</u>).   In short, even if Riley could now utterly impeach Edgington's testimony and leave the factfinder believing beyond a reasonable doubt that Government Exhibit 11f did not contain any magnesium tape, Riley's convictions would stand.

### B.  Defendant Gerhard's Pro Se Motion for Joinder (Docket # 674)

With respect to Gerhard's request to join Riley's Motion, the Court notes that there is a significant issue regarding whether Gerhard's belated Joinder Motion can be deemed timely based on excusable neglect.   <u>See</u> Fed. R. Crim. P. 45(b)(1)(B).   In this case, the Court need not address the timing issue.   Rather, it is clear that even if the Motion were deemed timely, it would fail.

The Court necessarily acknowledges that Edgington's testimony was more relevant to Gerhard.   In fact, the Government presented Edgington's testimony in an attempt to prove that Gerhard had purchased and brought magnesium tape to the Brown property.   Under the

---

mail in 2007.  In short, there is significant overlap in Edgington's 2008 trial testimony and his 2011 affidavit. Similarly, it is worth reiterating that the defendants and the Government stipulated at trial that the entirety of Government Exhibit 11f , the envelope and the magnesium tape, were found at the Brown property.

Government's theory of the case, this evidence supported finding Gerhard guilty of using and possessing destructive devices, a charge contained in Count IV.   However, Gerhard was found not guilty of the charge related to the possession and use of destructive devices, which clearly suggests that the jury did not give any significant weight to Government Exhibit 11f or Edgington's testimony.

Edgington's limited testimony was unrelated to the other charges against Gerhard and, thus, his revised or impeached testimony would not bring any further acquittals for Gerhard. Likewise, there is simply no probability, reasonable or otherwise, that disclosure of Edgington's interactions with law enforcement prior to trial would have produced a different result.  As the Court has already noted, the asserted impeachment material would have had limited admissibility and a modest impact.  Moreover, excluding Edgington's brief testimony entirely, ample other evidence provides support for Gerhard's participation in the conspiracies and other convictions. Thus, Gerhard's ability to impeach Edgington does not undermine confidence in the outcome of the trial.

Ultimately, the Court fails to see how the impeachment of Edgington's March 2008 testimony or any change in that testimony could yield a different outcome for Riley or Gerhard. The jury in this case did not need to rely upon or give any weight to Edgington's testimony or Government Exhibit 11f to reach any guilty verdict as to Riley or Gerhard.  At most, Edgington's testimony was a miniscule piece of a large puzzle.  The Court remains confident in the outcome of the trial even if Edgington's testimony is deemed untrue and unreliable.[4]

---

[4] To the extent that Edgington's Affidavit contains a cursory reference to the fact that he overheard other unnamed witnesses discussing their testimony, the Court does not believe the affidavit provides enough detailed information to warrant any inquiry into a possible violation of the Court's sequestration order.  The Court further notes that neither Riley nor Gerhard have explained how such a violation would amount to a due process violation or otherwise warrant a new trial.

## IV.    CONCLUSION

For the reasons just stated, the Motion to Dismiss or For New Trial (Docket # 673) is hereby DENIED and the Motion for Joinder (Docket # 674) is hereby DENIED as moot.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 8th day of July, 2011.